IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ELDIE CRUZ,

     Plaintiff,

v.                                                            Civ. No. 20-1162 GBW

KILOLO KIJAKAZI, *Acting*
*Commissioner of the Social Security*
*Administration*,

     Defendant.

## ORDER GRANTING REMAND

THIS MATTER comes before the Court on Plaintiff's Opposed Motion to Reverse and/or Remand the Social Security Agency ("SSA") decision to deny him Social Security Disability Insurance benefits ("SSDI"). *Doc. 25*. For the reasons explained below, the Court GRANTS Plaintiff's Motion and REMANDS the case to the Commissioner for further proceedings consistent with this opinion.

### I.    PROCEDURAL HISTORY

Plaintiff applied for SSDI on February 16, 2018, alleging disability beginning November 1, 2015. Administrative Record ("AR") at 198. Plaintiff's application was denied on initial review on August 1, 2018, and again on reconsideration on February 7, 2019. AR at 96, 113. On February 7, 2020, a hearing was held by an Administrative Law Judge ("ALJ"). AR at 39–82. The ALJ issued an unfavorable decision on March 30,

2020. AR at 12, 31. Plaintiff sought review from the Appeals Council, which denied review on September 17, 2020, AR at 1, making the ALJ's denial of the Commissioner's final decision, *see* 20 C.F.R. §§ 404.981, 422.210(a).

On November 9, 2020, Plaintiff filed suit in this Court, seeking review and reversal of the ALJ's decision. *Doc. 1*. On August 31, 2021, Plaintiff filed the instant Motion. *See doc. 25*. Defendant responded on December 1, 2021. *See doc. 29*. Briefing on Plaintiff's Motion was complete on December 21, 2021, *see doc. 33*, with the filing of Plaintiff's reply, *see doc. 32*.

## II.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards. *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800–01 (10th Cir. 1991). "In reviewing the ALJ's decision, [the Court] neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted).

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.3d at 800 (internal quotation marks omitted). "The record must

demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

### III.   ALJ EVALUATION

#### A. Legal Standard

For purposes of SSDI, an individual is disabled when he or she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 404.1520(a). If the Commissioner finds an individual disabled at any step, the next step is not taken. *Id*. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable … impairment … or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work."  *Id.* § 404.1520(a)(4)(i–iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases.  *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence."  20 C.F.R. § 404.1545(a)(3).  A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations."  *Id*. § 404.1545(a)(1).  Second, the ALJ determines the physical and mental demands of the claimant's past work.  "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'"  *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)).  Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands.  *Id*. at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### B. The ALJ's Decision

On March 30, 2020, the ALJ issued a decision denying Plaintiff's application for SSDI. *See* AR at 12, 31. In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. At step one, he found that while Plaintiff had "engaged in substantial gainful activity" after the alleged onset date for his disability from June 26, 2017, through December 9, 2017, "there has been a continuous 12-month period[] during which [Plaintiff] did not engage in substantial gainful activity." AR at 17-18. At step two, the ALJ found that Plaintiff "has the following severe impairments: bipolar disorder, anxiety disorder, mild degenerative disc disease—cervical, [and] obstructive sleep apnea." AR at 18. He also concluded that Plaintiff's "cocaine addiction in remission is a non-severe impairment" and Plaintiff's alleged encephalopathy "is a non-medically determinable impairment." *Id.*

At step three, the ALJ found that Plaintiff's severe impairments—both individually and in combination—did not meet or medically equal the severity of

Listing 1.04 (disorders of the spine), Listing 12.04 (depressive, bipolar and related disorders), Listing 12.06 (anxiety and obsessive-compulsive disorders), or any other impairment in the Listings. AR at 18-19; *see also* 20 C.F.R. pt. 404 subpt. P, app. 1 §§ 12.04, 12.06. When assessing whether Plaintiff's mental impairments met the Paragraph B criteria for mental impairment Listings, the ALJ found that Plaintiff has a mild limitation in understanding, remembering, or applying information and moderate limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. AR at 19.

At step four, the ALJ concluded that Plaintiff does not have the RFC to return to his past employment as a general surgeon (Dictionary of Occupational Tables ("DOT") 070.101-094) but does have the RFC "to perform medium work as defined in 20 C.F.R. § 404.1567(c)," subject to several limitations. AR at 20, 29. Physically, the ALJ found that Plaintiff can occasionally push, pull, lift, and carry fifty pounds; frequently push, pull, lift, and carry twenty-five pounds; and frequently reach overhead to both the left and right. AR at 20. He also concluded that Plaintiff "can sit for six hours in an eight-hour workday" and "stand or walk for six hours in an eight-hour workday." *Id.* Mentally, the ALJ found that Plaintiff "is able to understand, remember and carryout simple and detailed instructions" and "use judgment for simple and detailed tasks." *Id.* He also concluded that Plaintiff can "occasionally interact with supervisors, co-workers, and the

public" and "tolerate few changes in a routine work setting defined as simple and detailed." *Id.*

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and determined that he can perform jobs that exist in significant numbers in the national economy. AR at 30. Specifically, the ALJ found that that Plaintiff can perform the requirements of four representative occupations: (1) janitor (DOT 389.683-010); (2) hand packager (DOT 920.587-018); (3) garment sorter (DOT 222.687-014); and (4) housekeeper (DOT 323.687-014, 850,000). *Id.* Accordingly, the ALJ concluded that Plaintiff was not disabled (as the Social Security Act defines the term) from November 1, 2015, through the date of his decision. AR at 31.

## IV.  PARTIES' POSITIONS

Plaintiff asserts that the ALJ erred in five ways: (A) not meaningfully considering the treatment notes of Matt Tandy (a licensed professional clinical counselor) when evaluating Plaintiff's symptoms and the persuasiveness of medical source opinions, *see doc. 25* at 21-23; (B) not meaningfully considering the treatment notes of Dr. Kevin Rexroad when evaluating Plaintiff's symptoms and the persuasiveness of medical source opinions, *see id.* at 23; (C) discounting the medical opinions of Dr. Amy DeBernardi (a consultative examiner) for reasons not supported by substantial evidence, *see id.* at 24-25; (D) not properly considering the objective findings and

conclusions in Dr. Jeffrey Young's neuropsychological examination report, *see id.* at 25-26; and (E) improperly assessing the persuasiveness of Dr. Roxana Raicu's opinions, *see id.* at 26-27. Defendant disputes these errors and contends, in the alternative, that even if the ALJ erred, the error was harmless because substantial evidence exists for his RFC finding. *See doc. 29*.

## V.  ANALYSIS

It is axiomatic that the ALJ must comply with the applicable regulations when assessing a medical source's opinions and provide "specific, legitimate reasons for rejecting [them]." *See, e.g.*, Bryant v. Comm'r, 753 F. App'x 637, 640 (10th Cir. 2018) (quoting *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003)). The breadth and detail in the ALJ's disability determination make it one of the better determinations that the Court has reviewed of late. But the ALJ nonetheless violated the second part of this axiom when assessing the persuasiveness of Dr. Raicu's opinions. His error prejudiced Plaintiff, so remand is warranted.[1]

### A. <u>Legal Requirements for Assessments of Medical Source Opinions</u>

20 C.F.R. § 404.1520c provides the analytical framework and articulation requirements for the ALJ's assessment of Dr. Raicu's opinions since Plaintiff applied for

---

[1] Having remanded based on Plaintiff's fifth argument, the Court need not, and so does not, consider the merits of Plaintiff's first, second, third, or fourth arguments.

SSDI after March 27, 2017.  Under this regulation, the ALJ assesses multiple opinions from one medical source in a "single analysis" and need not individually articulate "how [he] considered each medical opinion."  20 C.F.R. § 404.1520c(b)(1).  The ALJ must consider several factors in his assessment: supportability; consistency; relationship with the claimant; specialization; and other factors tending to support or contradict a medical opinion, such as "a medical [source's] familiarity with the other evidence in the claim." *Id.* § 404.1520c(c)).  But he need only articulate his consideration of supportability and consistency, the most important of these factors.  *See id.* § 404.1520c(b)(2).

      The ALJ's findings about supportability, consistency, and other factors must be supported by substantial evidence.  *See Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).  The ALJ must "consider all evidence in the case" when making these findings though he need not discuss all of it.  *Bryant*, 753 F. App'x at 640 (citing *Clifton*, 79 F.3d at 1009-10).  He must also not "mischaracterize or downplay evidence to support [his] findings," *id.* at 641 (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987)), or "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence," *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).

      The ALJ's analysis of supportability, consistency, and other factors must be sufficient to facilitate judicial review.  *See Lobato v. Kijakazi*, Civ. No. 21-207 JB/KK, 2022

9

WL 500395, at *10 (D.N.M. Feb. 18, 2022) (citing *Clifton*, 79 F.3d at 1009-10, and *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005)).  The ALJ, though, need not reproduce earlier discussions of evidence when finding medical opinions inconsistent with the evidentiary record or lacking objective evidentiary support so long as the link between these discussions and his consistency and supportability findings is apparent.  *See Endriss v. Astrue*, 506 F. App'x 772, 775 (10th Cir. 2012) (finding that the conclusory statement that medical source's opinion was "inconsistent with objective medical evidence of record" constituted a sufficient consistency analysis where, to support that statement, the ALJ cited to exhibits in the record that he had discussed earlier in his determination); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (advising courts to "exercise common sense" when following an ALJ's reasoning).

Remand is only warranted where an ALJ errs in assessing a medical source's opinion if that error is harmful.  *See Keyes-Zachary*, 695 F.3d at 1162-63.  But the Court must "apply harmless error analysis cautiously in the administrative review setting." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).  Broadly, an error is harmless "where, based on material the ALJ did at least consider (just not properly), [the Court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."  *Id.* at 733-34 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)).  In the context of

assessing the persuasiveness of a medical opinion, an error is harmless "if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity." *Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014).

## B.  Improper Assessment of One of Dr. Raicu's Opinions

The ALJ erred when evaluating one of the two opinions that Dr. Raicu expressed. In May 2018, Dr. Raicu noted on a psychiatric supplemental information form during an office visit that she had not advised Plaintiff to return to work due to issues with his mood and psychotic thoughts.  AR at 723.  Insofar as this notation opines on Plaintiff's ability to work, the ALJ properly rejected it for opining on an issue reserved for the Commissioner.  *See* 20 C.F.R. §§ 404.1520b(c), 404.1520b(c)(3) (explaining that whether an individual can work is an issue reserved to the Commissioner, that a statement about this issue is evidence that "is inherently neither valuable nor persuasive," and that the Commissioner "will not provide any analysis about how [she] considered such evidence in [her] determination").

As for Dr. Raicu's second set of opinions, on March 8, 2018, she completed a medical source statement about Plaintiff's mental limitations in which she opined the following: (i) Plaintiff cannot satisfactorily deal with normal work stress or the stress of semiskilled and skilled work, satisfactorily respond appropriately to changes in a routine work setting, or satisfactorily accept instructions and respond appropriately to

11

criticism from supervisors in a regular work setting; (ii) Plaintiff has at least a seriously limited ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, if not an inability to do so satisfactorily; and (iii) Plaintiff has a seriously limited ability to carry out very short and simple instructions; understand, remember, and carry out detailed instructions; set realistic goals or make plans independently of others; maintain attention for two hour segments; maintain regular attendance and be punctual within customary, usually strict tolerances; work in coordination with or proximity to others without being unduly distracted; and perform at a consistent pace without an unreasonable number and length of rest periods. AR at 245-46, 1266-67.

Unlike Dr. Raicu's later advice to Plaintiff concerning whether he should return to work, these opinions do not address issues reserved for the Commissioner. *Cf.* 20 C.F.R. § 404.1520b(c)(3) (listing the eight issues reserved for the Commissioner). Therefore, the ALJ had to assess their persuasiveness under 20 C.F.R. § 404.1520c and "explain how [he] considered the supportability and consistency factors for [these] opinions." *See id.* § 404.1520c(b)(2). Here, the ALJ did so by explaining that he found Dr. Raicu's opinions "not persuasive" for being "inconsistent with mental status exams" and "not supported with objective evidence." AR at 28.

Plaintiff contends that the ALJ's explanation is flawed for two reasons: (i) it "fails

to explain how Dr. Raicu's opinions are inconsistent with mental status exams and the objective medical evidence," *see doc. 25* at 26; and (ii) the statement "fails to consider evidence supporting Dr. Raicu's opinions including the treatment notes from Mr. Tandy, LPCC, Dr. Rexroad, and Dr. Young," which all reference Plaintiff's paranoid delusions and hallucinations, *see id.* at 27.  The Court agrees with the first argument in part and so does not reach the second.

There is not substantial evidentiary support for the ALJ's conclusion that Dr. Raicu's March 8, 2018, opinions are "not supported with objective evidence."  In her medical source statement, Dr. Raicu did not provide any explanations specific to each opined limitation.  *See* AR at 245-46, 1266-67.  She did, however, explain that "severe anxiety to the point of paranoid thoughts affecting ability to focus or go to work" was the clinical finding demonstrating the severity of Plaintiff's mental impairment and symptoms, *see* AR at 243, 1264.  She also buttressed her explanation with the following observations of Plaintiff's signs and symptoms: Anhedonia or pervasive loss of interest in almost all activities; decreased energy; blunt, flat or inappropriate affect; feelings of guilt or worthlessness; generalized persistent anxiety; mood disturbance; difficulty thinking or concentrating; persistent disturbances of mood or affect; apprehensive expectation; paranoid thinking or inappropriate suspiciousness; recurrent obsessions or compulsions which are a source of marked distress; emotional withdrawal or isolation;

and persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity or situation. AR at 244, 1265.

Mental status exams like this one "document a clinician's observations of the patient at a particular point in time and cover a variety of categories, including appearance, emotions, thoughts, cognition, judgment, and insight." *McGehee v. Saul*, Civ. No. 18-1164 KK, 2019 WL 6219507, at *6 (D.N.M. Nov. 21, 2019). Such observations are objective medical evidence. *See* 20 C.F.R. § 404.1502(f) (defining objective medical evidence as "signs, laboratory findings, or both"); 20 C.F.R. § 404.1502(g) (defining signs as "one or more anatomical, physiological, or psychological abnormalities that can be observed" and psychiatric signs as "medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception"). Therefore, the ALJ's statement that Dr. Raicu's opinions are "not supported with objective evidence," AR at 28, is factually incorrect. Dr. Raicu provided objective evidence to support her opinions. The ALJ's finding otherwise and failure to acknowledge this evidence run afoul of the Tenth Circuit's admonishment that the ALJ must not mischaracterize evidence that does not support his findings. *See Bryant*, 753 F. App'x at 640.

Turning to the harmfulness of this error, the Court concludes that the ALJ's error prejudices Plaintiff. As noted earlier, improperly assessing a medical source's opinions

is harmful if the RFC found by the ALJ does not expressly or implicitly incorporate the source's opined limitations about the claimant's ability to function. *See Mays*, 739 F.3d at 578-79. Here, the RFC found by the ALJ is inconsistent with at least some of Dr. Raicu's opinions.

As noted earlier, Dr. Raicu opined that, *inter alia*, Plaintiff had "seriously limited, but not precluded" abilities in the following areas (which the ALJ omitted when summarizing her opinions, *see* AR at 27-28): carrying out very short and simple instructions; understanding, remembering, and carrying out detailed instructions; setting realistic goals or making plans independently of others; maintaining attention for two hour segments; maintaining regular attendance and being punctual within customary, usually strict tolerances; working in coordination with or proximity to others without being unduly distracted; and performing at a consistent pace without an unreasonable number and length of rest periods. *See* AR at 245-46, 1266-67. "[A] rating of 'seriously limited but not precluded' is equivalent to a 'marked' limitation in the regulatory listings," *Reveteriano v. Astrue*, 490 F. App'x 945, 948 (10th Cir. 2012) (citing *Cruse v. U.S. Dep't of Health & Hum. Servs.*, 49 F.3d 614, 618 (10th Cir. 1995)), not the moderate limitation to which the ALJ translated it, *see* AR at 28 (characterizing Dr. Raicu's opinion that Plaintiff had at least a seriously limited ability to complete a normal workday and workweek, if not an inability to do so satisfactorily, as an opinion

that Plaintiff had "moderate to marked limitation for completing a workweek").[2] Therefore, when properly translated to the SSA's five-point scale, Dr. Raicu's opinions include marked limitations in Plaintiff's abilities to carry out very short and simple instructions; understand, remember, and carry out detailed instructions; set realistic goals or make plans independently of others; maintain attention for two hour segments; maintain regular attendance and be punctual within customary, usually strict tolerances; work in coordination with or proximity to others without being unduly distracted; and perform at a consistent pace without an unreasonable number and length of rest periods. *See* AR at 245-46, 1266-67. The first two marked limitations are inconsistent with the finding in the RFC that Plaintiff "is able to understand, remember, and carryout simple and detailed instructions." *See* AR at 20.[3]

---

[2] Like the regulatory listings, the Medical Source Statement for Mental Limitations completed by Dr. Raicu poses five-point scale for a claimant's mental abilities: (1) unlimited or very good; (2) limited but satisfactory; (3) seriously limited, but not precluded; (4) unable to meet competitive standards; and (5) no useful ability to function. *See* AR at 245, 1266. The points on this scale, though, differ from those in the listings, which are (1) no limitation; (2) mild limitation; (3) moderate limitation; (4) marked limitation; and (5) extreme limitation. *See* 20 C.F.R. pt. 404 subpt. P, app. 1 § 12.00(F)(2). The ALJ appears to have treated threes on these scales as equivalent despite their different definitions and meanings.

[3] It might be argued that erroneously concluding that Dr. Raicu's opinions are not supported with objective evidence is harmless since the ALJ also concluded that these opinions were "inconsistent with mental status exams." *See* AR at 28. In dicta, this Court has alluded that supportability and consistency may be adequate and independent grounds for rejecting a medical source's opinions under 20 C.F.R. § 404.1520c such that erroneous consideration of one of these factors is harmless so long as the articulated consideration of the other factor was proper. *See Lobato*, 2022 WL 500395, at *14, *16. Ultimately, though, the Court need not reach this issue as Defendant waived it by not raising it in its response. *See* doc. 29 at 19-20 (defending the entirety of the ALJ's explanation for rejecting Dr. Raicu's opinion); *Wall v. Astrue*, 561 F.3d 1048, 1066 (10th Cir. 2009) (affirming a district court for deeming that a claimant had waived an argument not developed in briefing).

## VI. CONCLUSION

For the foregoing reasons, the Court finds that the ALJ erred in his evaluation of Dr. Raicu's opinions and that his error was harmful. Therefore, the Court hereby GRANTS Plaintiff's Opposed Motion to Reverse and/or Remand *(doc. 25)* and REMANDS this case to the Commissioner for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**